UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYDAR AL KHAFATI, CDCR # AD6321, Plaintiff, v. BRIAN ROBERTS, Commissioner; RICHARD GUERRERO, Dep. Comm.; DIANE DOBB, Commissioner; CDCR, Defendants. | Case No.: 3:19-cv-01811-LAB-LL **ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |

Plaintiff Haydar Al Khafati, a prisoner at the Correctional Training Facility ("CTF") in Soledad, California, has filed a pro se civil rights complaint pursuant to 42 U.S.C. Section 1983. The Court granted Plaintiff's Motion to Proceed In Forma Pauperis ("IFP"), but dismissed Plaintiff's initial Complaint (ECF No. 1) for failing to state a claim pursuant to 28 U.S.C. Section 1915(e)(2)(B) and 28 U.S.C. Section 1915A(b) and

1    granted Plaintiff leave to amend.  (*See* ECF No. 4.)

2         Plaintiff subsequently filed a First Amended Complaint alleging that the California

3    Department of Corrections and Rehabilitation ("CDCR") and Parole Board

4    Commissioners or Deputy Commissioners Brian Roberts, Richard Guerrero, and Diane

5    Dobb (collectively, "Defendants") violated his due process and equal protection rights by

6    failing to ensure that Plaintiff received access to certain educational and vocational

7    training Plaintiff believes is necessary for him to obtain parole.  (*See* First Am. Compl. at

8    3-4.)

9    **I.      Screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A**

10        A. <u>Standard of Review</u>

11        Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-

12   Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these

13   statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of

14   it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants

15   who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)

16   (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir.

17   2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that

18   the targets of frivolous or malicious suits need not bear the expense of responding.'"

19   *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford*

20   *Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

21        "The standard for determining whether a plaintiff has failed to state a claim upon

22   which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

23   Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668

24   F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th

25   Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

26   applied in the context of failure to state a claim under Federal Rule of Civil Procedure

27   12(b)(6)").  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.
While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil
rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of
any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v.
Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements
of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673
F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents
incorporated into the complaint by reference" to be part of the pleading when
determining whether the plaintiff has stated a claim upon which relief may be granted.
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal.
Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c)
("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading
for all purposes.").

B. Factual Allegations

Plaintiff's Complaint focuses on two parole hearings, one on July 29, 2014 and
another on August 15, 2019, and the alleged failure of the commissioners presiding over
those hearings and the CDCR to ensure that Plaintiff received access to certain
educational or vocational programs Plaintiff believes are necessary for him to receive
parole. (*See* First Am. Compl. at 3-4.)

At the July 29, 2014 hearing, presided over by Defendants Roberts and Guerrero,
Plaintiff was "issued instructions . . . directing [him] to obtain (at least one vocation and
possibly two vocations)," and that "in the event on-site programs are not
available . . . [P]laintiff '[s]hould work with his correctional counselor to develop a
vocation until a vocation can be assigned to plaintiff.'" (*See id.* at 3 (ostensibly quoting
Exhibit A); *but see id.* Ex. A, at 9 ("[Plaintiff was instructed to obtain at least one

vocation and if possible two vocations.  Where on-site vocation programs are not available to inmate he should work with his correctional counselor to develop one and until he can attend he should obtain books from the library on the vocation, read them and prepare a book report to present to the lifer panel on what he has read, learned and how he can apply it if given a parole date.").)  Plaintiff alleges that it was Roberts who issued these instructions, and that "[l]iability attaches" for violating Plaintiff's Fifth and Fourteenth Amendment rights to "Due Process and Equal Treatment under the Laws" "where . . . [Roberts] knew that plaintiff [had] no formal education and does not speak [E]nglish much at all; and . . . failed to alert the assignment of Plaintiff's needs."[1]  (*Id.* at 3.)  Guerrero "simply followed the intangible lead set by [Roberts] and allowed plaintiff's rights to be violated by failing to cause the institution and Assignment Office to adhere to its instructions to Plaintiff" to develop a vocation and obtain additional education.  (*See id.*)  Although the First Amended Complaint does not state directly whether Plaintiff received access to vocational programs, it implies that he did not.  (*See id.* at 3.)  Plaintiff also notes that he made "vigorous efforts" to take the Test of Adult Basic Education ("TABE"), "which would cause plaintiff to be placed in an English/ Spanish [sic] Lear[n]ing class" and lead to Plaintiff "eventually obtain[ing] a GED as directed by the defendant."  (*Id.*)  Despite those efforts, Plaintiff has not been administered the TABE test.  (*See id.* at 2-3.)

Defendant Diane Dobb presided over Plaintiff's August 15, 2019 parole hearing.  (*Id.* at 4.)  Plaintiff alleges that Dobb "knew at the hearing that [p]laintiff had been denied necessary education to meet the initial Board Commissioner's instructions to among other things [o]btain a GED."  (*Id.*)  Plaintiff does not allege that Dobb relied on his

---

[1] Elsewhere in Plaintiff refers to the alleged failure of Defendants Roberts and Guerrero to "issue a follow-up order to be placed in the C-File," but does not explain how, if at all, that differs from his allegations regarding their failure to alert the "Assignment Office" about Plaintiff's alleged need to complete educational and vocational training.  (*See* First Am. Compl. at 2-3.)

failure to obtain a GED in denying him parole (or even state whether he was denied parole at all), but the Court assumes that she did. (*See id.*) Dobb allegedly "den[ied] [p]laintiff equal treatment where she based her equal treatment violations using plaintiff's history of drug use and plaintiff's current enrollment in a mental health delivery system within the CDCR . . . ." (*Id.*) Plaintiff argues that this also violates due process because "it is well settled law that a Board of Parole Hearing Commissioner may not categorically exclude [P]laintiff from Due Process entitlements based on plaintiff's mental disability . . . ." (*Id.*) Additionally, Plaintiff refers to Exhibit C to the Complaint, which is a document written by Plaintiff taking issue with some of the factual assertions Dobb made during his parole hearing, specifically those relating to the facts of Plaintiff's underlying criminal offense, prior drug use, and past and present mental health treatment. (*See generally id.* at Ex. C, 25-35.)

Plaintiff also alleges that the CDCR is liable for these alleged violations of due process and equal protection because it "represents the defendants and each of them under color of law and is equally liable to be sued in its official capacity . . . ." (*Id.* at 5.) Although Plaintiff does not explain further, he states that "[w]hile the posture of the instant Civil Complaint is based on the defendants' violating plaintiff's Due Process and Equal Treatment rights . . . by inflicting cruel and unusual punishment on [P]laintiff; [P]laintiff asks of this court to take judicial notice that [P]laintiff's intent by this complaint is to address the defendant's violations associated with the infliction of cruel and unusual punishment and Due Process violations, respectively." (*Id.*)

In addition to $750,000 in damages and $1.25 million in punitive damages, Plaintiff seeks an injunction "preventing the defendants from using their failure to TABE test plaintiff in the BPH process." (*Id.* at 7.)

C. Analysis

    1. Absolute Immunity

As a threshold matter, Defendants Roberts, Guerrero, and Dobb are absolutely immune from Section 1983 damages claims for decisions granting, denying, or revoking parole. *See Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991) ("Although a section 1983 action may be maintained against officials acting in their individual capacities, parole board officials are entitled to absolute immunity from liability for damages for their actions taken when processing parole applications."). "[P]arole board officials of the BPT are entitled to absolute quasi-judicial immunity for decisions 'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges." *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981)). This immunity extends not only to actions "taken when processing parole applications," *see Bermudez*, 936 F.2d at 1066, but also "to parole officials['] . . . 'imposition of parole conditions' and . . . 'execution of parole revocation procedures . . . .'" *Swift*, 384 F.3d at 1189 (quoting *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983), *overruled on other grounds as recognized in Swift*, 384 F.3d at 1190).

Plaintiff's claims against Defendant Dobb, which focus exclusively on the facts and reasoning underlying her decision to deny Plaintiff parole, are clearly barred by this doctrine.[2] *See Swift*, 384 F.3d at 1189 (distinguishing between "quasi-judicial" actions

---

[2] As mentioned previously, Plaintiff contends that "it is well settled law that a Board of Parole Hearing Commissioner may not categorically exclude [P]laintiff from Due Process entitlements based on plaintiff's mental disability . . . ." (First Am. Compl. at 4.) However, the case on which Plaintiff apparently bases this conclusion, *Thompson v. Davis*, 295 F.3d 890, 897-98 (9th Cir. 2002), arose under the Americans with Disabilities Act ("ADA"), not the Due Process Clause, and does not hold that the Due Process Clause (or any other provision of the Constitution) bars parole boards from considering a prisoner's mental health or prior drug use in determining whether to grant parole. (*See* First Am. Compl. Ex. C (citing *Thompson*).) Moreover, the facts alleged in Plaintiff's Complaint do not demonstrate that Defendant Dobb *categorically* excluded individuals with mental health issues or prior drug use from parole. (*See id.* at 4.) Instead, Plaintiff alleges that Dobb considered Plaintiff's individual circumstances and denied him parole based on those individual circumstances. (*See id.* at 4 (alleging that Dobb relied on "*plaintiff's* history of drug use and *plaintiff's* current enrollment in a mental health delivery system within the CDCR . . ." in denying parole (emphasis added)); *see also id.* at Ex. C.)

3:19-cv-01811-LAB-LL

that relate to the decision to grant, deny, or revoke parole, for which parole officials have absolute immunity, and other actions like reporting parole violations, for which officials have only qualified immunity); *Gay v. Parsons*, No. 16-cv-5998-CRB, 2019 WL 3387954, at \*5 (N.D. Cal. July 26, 2019) (stating that the exercise of discretion in granting or denying parole is akin to the role of a judge, and therefore parole officials are absolutely immune when they exercise that discretion). Although Plaintiff's claims against Defendants Roberts and Guerrero are superficially different in that they center on Roberts' and Guerrero's allegedly failure to ensure Plaintiff received access to the educational or vocational training they deemed necessary for Plaintiff to obtain parole, because "the imposition of parole conditions is an integral part of the decision to grant parole," absolute immunity extends to this conduct as well. *See Anderson*, 714 F.2d at 909.

As a result, Plaintiff's damages claims against Defendants Roberts, Guerrero, and Dobb are dismissed sua sponte for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### 2. Due Process

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

3:19-cv-01811-LAB-LL

1    Plaintiff's due process allegations are similar to ones considered and rejected by
2    the Eastern District of California in *Andersen v. Kernan*, No. 1:16-cv-00369-LJO-BAM
3    (PC), 2017 WL 5608089 (E.D. Cal. Nov. 21, 2017), *aff'd* 735 F. App'x 463 (9th Cir.
4    2018).  In *Andersen* the plaintiff was an inmate who claimed that his inability to enroll
5    (based on limited space and exclusions for life inmates and sex offenders) in certain
6    treatment or rehabilitation programs rendered him functionally ineligible for parole.  *See*
7    *id.* at *2.  Thus, the *Andersen* plaintiff alleged, "the state is prolonging his sentencing by
8    impeding his ability to qualify for parole and he will not be able to meet the criteria of the
9    BPH panel for the next hearing or any other hearing because he cannot show evidence
10   that he participated in the required programs, groups, therapy, treatment and education."
11   *Id.*  The *Andersen* Court rejected these contentions, concluding that the plaintiff failed to
12   state a due process claim because: (1) there is no constitutionally guaranteed liberty
13   interest in rehabilitative or educational programs; (2) there is no liberty interest in parole
14   arising from the Constitution provided that the denial of parole meets the requirements of
15   procedural due process (i.e. that the prisoner was present at the hearing, had an
16   opportunity to be heard, and was provided with a statement of reasons for the parole
17   board's decision); and (3) there was no violation of substantive due process in "fail[ing]
18   to provide affirmative assistance in meeting BPH's criteria for early release" because the
19   conduct is not "arbitrary, [n]or [did it] shock the conscience, and violate the decencies of
20   civilized conduct."  *See id.* at *2-3 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833,
21   846-47 (1998)).  The Court also held that the plaintiff failed to allege an Eighth
22   Amendment cruel and unusual punishment claim based on the same underlying conduct
23   because "'deprivation of rehabilitation and educational programs does not violate the
24   Eighth Amendment'"  *Id.* at *2-4 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348
25   (1981)).
26       Much of the same reasoning applies in this case.  As the Court noted in dismissing
27   Plaintiff's initial complaint, there is no Eighth or Fourteenth Amendment right to access

testing or educational and rehabilitation programs in prison.[3]  *See* ECF No. 4, at 6; *see also Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (depriving prisoner of rehabilitation and educational programs does not violate Eighth Amendment); *Rizzo v. Dawson*, 778 F.2d 527, 530-31 (9th Cir. 1985) (absence of property interest in educational program in prison precluded Fourteenth Amendment claim); *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) ("[T]here is no constitutional right to rehabilitation."), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995)).

Additionally, state law does not create a liberty interest in rehabilitative programs "for purposes of parole [because] . . . participation is not statutorily required for parole suitability."  *Eckstrom v. Beard*, No. 2:16-cv-0275-KJM-AC-P, 2018 WL 6335407, at *4 (E.D. Cal. Dec. 5, 2018) (internal quotation marks omitted) (citing 15 Cal. Code Reg. § 2281 (programming is one of several factors to be considered in determining suitability for parole)), *report and recommendation adopted in relevant part*, 2019 WL 479633, at *1 (E.D. Cal. Feb. 7, 2019).  "To the extent that California law creates a liberty interest in parole, however, 'the Due Process Clause requires fair procedures for its vindication,' and federal courts merely 'review the application of those constitutionally required procedures.'"  *Andersen*, 2017 WL 5608089, at *3 (quoting *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011)).  As Plaintiff's Complaint and the attached exhibits make clear, (*see* First Am. Compl. at 3-4, Exs. A, C.) the requirements of procedural due process were satisfied because Plaintiff was present at both parole hearings, had an opportunity to be heard, and was provided with a statement of reasons why parole was denied.  *See Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) ("To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution;

_____

[3] For this reason, to the extent Plaintiff wishes to assert an Eighth Amendment cruel and unusual punishment claim through his periodic and factually undeveloped invocations of the phrase "cruel and unusual punishment," those claims are dismissed.  (*See* First Am. Compl. at 4, 6.)

1  (2) a deprivation of the interest by the government; [and] (3) lack of process.'" (quoting

2  *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993))).

3          To the extent Plaintiff alleges a deprivation of substantive due process rather than

4  procedural due process, that claim also fails.  To violate substantive due process, the

5  conduct at issue must be arbitrary, "'shock[] the conscience,'" or "violate[] the 'decencies

6  of civilized conduct.'"  *Lewis*, 523 U.S. at 846-47 (quoting *Rochin v. California*, 342 U.S.

7  165, 17   Although Plaintiff alleges that Defendants failed to provide help in meeting the

8  criteria for early release, he does not allege that the rehabilitative or educational programs

9  he seeks are wholly unavailable, or otherwise allege arbitrary conduct that shocks the

10  conscience.  (*See* First Am. Compl. at 3-4.)

11          Thus, even assuming Plaintiff's claims against Defendants Roberts, Guerrero, and

12  Dobb are not barred by absolute immunity, his due process claims must be dismissed in

13  their entirety sua sponte for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28

14  U.S.C. § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

15                          3.  Equal Protection

16          The "Equal Protection Clause of the Fourteenth Amendment commands that no

17  State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

18  which is essentially a direction that all persons similarly situated should be treated

19  alike."[4]  *City of Cleburn v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985).  Plaintiff does

20  not allege any facts suggesting that he was treated differently from others similarly

21  situated based on his membership in a protected class, nor does he allege a classification

22  that implicates fundamental rights.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 686

23

24  [4] Although Plaintiff purports to rely on the "FIFTH AMENDMENT right to EQUAL TREATMENT,"
25  (*see* First Am. Compl. at 2 (emphasis in original)), the Fifth Amendment does not contain an equal
    protection clause.  *See* U.S. Const. amend. V.  In any event, however, "the concepts of equal protection
26  and due process . . . are not mutually exclusive," *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954), and
    "Equal Protection analysis in the Fifth Amendment area is the same as that under the Fourteenth
27  Amendment."  *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).

3:19-cv-01811-LAB-LL

(9th Cir. 2001). As a result, Plaintiff appears to be proceeding with a "class of one" equal protection claim. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id.*; *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.").

Plaintiff has not alleged any of the necessary elements of a claim for denial of equal protection. As an initial matter, parole decisions and other similarly discretionary actions like ensuring Plaintiff receives access to educational or vocational training may not give rise to class of one equal protection claims because "treating like individuals differently is an accepted consequence of the discretion granted." *See Engquist v. Or. Dep't of Ag.*, 553 U.S. 591, 603 (2008); *see also Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (holding that with respect to discretionary decisions "[a]bsent any pattern of generally exercising the discretion in a particular manner while treating one individual differently *and* detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory." (emphasis in original)).

Even assuming that Defendants' discretionary decisions denying Plaintiff parole or failing to ensure that he received access to educational or vocational training so that he could receive parole could violate the Equal Protection Clause on a "class of one" theory, Plaintiff still must allege that he was "intentionally treated differently from others similarly situated." *See Vill. of Willowbrook*, 528 U.S. at 564. But his complaint does not offer any "factual content" that would allow the Court to "draw the reasonable

inference" that he was, in fact, treated differently from others similarly situated or that any difference in treatment was intentional. *See Iqbal*, 556 U.S. at 568 ("[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to show entitlement to relief). Plaintiff's Complaint merely alleges that Defendants violated his right to "Equal Treatment under the Laws," (*See* First Am. Compl. at 3-4.), or, at best, that Defendant Dobb's consideration of Plaintiff's prior drug use and mental health treatment violated equal protection in some unspecified manner. (*See id.* at 4.) These conclusory allegations are insufficient. *See, e.g.*, *George v. Uribe*, No. 11-CV-70 JLS (RBB), 2012 WL 993243, at *6 (S.D. Cal. Mar. 23, 2012) (concluding that allegations that defendants "intentionally treated Plaintiff differently from others" who participated in a prison riot was insufficient without supporting facts). Additionally, Plaintiff fails to allege any facts from which the Court could conclude that Defendants' actions were irrational or lacked a legitimate penological interest. *See Barbarin v. Dep't of Corrs. & Rehab.*, No. 3:19-cv-1714-JAH-RBB, 2019 WL 5454435, at *4 (S.D. Cal. Oct. 24, 2019) (plaintiff "fail[ed] to allege any facts from which the Court could conclude that [Defendants'] policy . . . lacks a rational or penological interest.").

### 4. Official Capacity Claims Against All Defendants

Plaintiff's allegations that Defendants violated his constitutional rights in their official capacities must also be dismissed for an additional reason. The Complaint includes check boxes to indicate whether Plaintiff intends to sue Defendants in their individual or official capacities, or both. (*See* First Am. Compl. at 2.) Plaintiff checked the boxes for both. (*See id.*) "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As a result, Plaintiff's official capacity claims must be dismissed sua sponte for failure to state a claim because: (1) there is no conduct by a "person" as required for a claim under Section 1983, and (2) the Eleventh Amendment bars suits for damages against state officials sued in their

3:19-cv-01811-LAB-LL

1  official capacity absent an express waiver of immunity by Congress or the state, neither

2  of which is present under these circumstances. *See id.*; *Kentucky v. Graham*, 473 U.S.

3  159, 169 (1985); *see also* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

4          5. <u>Claims Against CDCR</u>

5        Plaintiff's claims against the CDCR also must be dismissed. The CDCR is not a

6  "person[]" subject to suit under Section 1983 and is entitled to immunity from suit for

7  monetary damages under the Eleventh Amendment. *See Seminole Tribe of Fla. v.*

8  *Florida*, 517 U.S. 44, 53-54 (1996); *Groten v. California*, 251 F.3d 844, 851 (9th Cir.

9  2001) (citing *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993)); *see also*

10  *Dragasits v. California*, No. 3:16-cv-01998-BEN-JLB, 2016 WL 680947, at *3 (S.D.

11  Cal. Nov. 15, 2016) ("The State of California's Department of Corrections and

12  Rehabilitation and any state prison, correctional agency, sub-division, or department

13  under its jurisdiction, are not 'persons' subject to suit under § 1983." (citing *Groten*, 251

14  F.3d at 851)). Accordingly, Plaintiff's claims against the CDCR are dismissed sua sponte

15  for failure to state a plausible claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. §

16  1915A(b)(1).

17      D.   <u>Leave to Amend</u>

18        Because Plaintiff has already been provided a short and plain statement of his

19  pleading deficiencies, as well as an opportunity to amend those claims to no avail, and

20  given the application of absolute immunity and Eleventh Amendment immunity to each

21  Defendant as outlined above, the Court finds that granting further leave to amend would

22  be futile. *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014)

23  ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'")

24  (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v.*

25  *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has

26  previously been granted leave to amend and has subsequently failed to add the requisite

27

1  particularity to its claims, [t]he district court's discretion to deny leave to amend is

2  particularly broad." (internal quotation marks omitted) (second alteration in original)).

3  **II.     Conclusion and Orders**

4          For the reasons discussed, the Court:

5          1)      **DISMISSES** this civil action without further leave to amend for failure to

6  state a claim upon which Section 1983 relief can be granted pursuant to 28 U.S.C.

7  Section 1915(e)(2)(B)(ii) and 28 U.S.C. Section 1915A(b)(1);

8          2)      **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant

9  to 28 U.S.C. Section 1915(a)(3), and

10         3)      **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and

11 close the file.

13 Dated:  March 30, 2020

14                                 Hon. Larry Alan Burns
                                   Chief United States District Judge